The undersigned have reviewed the prior Full Commission Opinion and Award based upon the evidentiary record and the Opinion of the Court of Appeals remanding this matter with instructions regarding a determination of maximum medical improvement. The Full Commission hereby denies defendant's motion to reconsider the September 11, 2001 Order and enters the following Opinion and Award in accordance with the remand from the Court of Appeals.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the I.C. Form 21, Agreement for Compensation, which was approved by the Commission on February 9, 1995, in the two Form 26 Supplemental Agreements which were approved on March 7, 1995 and November 7, 1995, in the Pre-Trial Agreement which was filed on August 11, 1998, which are hereby incorporated herein by reference, and at the hearing as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Hewitt Coleman Associates, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on November 28, 1994, as a result of which the parties entered into the Form 21 Agreement. Plaintiff has received benefits pursuant to the Form 21 for various dates, the last being on February 9, 1997.
5. Plaintiff's average weekly wage is $378.02, which yields a weekly compensation rate of $252.03 per week.
6. Plaintiff last worked for defendant on October 17, 1996.
7. Defendant authorized plaintiff to see Dr. Gary Poehling for a one-time independent medical evaluation.
8. Following the hearing before Deputy Commissioner Dollar, the deposition of Gary G. Poehling, M.D., was received into evidence.
9. The issues for determination are:
 a. Whether the desk clerk and guest services hostess duties at Comfort Inn and Best Stay Motel were within her work restrictions on and after February 10, 1997, and thus suitable employment.
 b. Whether plaintiff is entitled to have defendant pay for treatment rendered by Dr. Gary Poehling.
 c. Whether plaintiff is entitled to change her authorized treating physician to Dr. Gary Poehling.
 d. Whether plaintiff is entitled to additional compensation under the Act on and after February 10, 1997.
9. The parties stipulated the following documentary evidence into the record:
a. Medical Records, 229 pages,
b. Industrial Commission forms, 24 pages,
c. Discovery Requests, 10 pages,
d. Employment Records, 16 pages, and
e. 1995 Work Calendar, 5 pages.
 ***********
The Full Commission rejects the finding of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Dollar, plaintiff was a thirty-two year old right-hand dominant female high school graduate. Her work history includes work in fast food restaurants and a shoe store prior to high school graduation. After high school graduation, she worked at Budget Rent-a-Car, Premier Cruise Lines and in various motels. She also worked as a secretary for an insurance company prior to going to work for defendant.
2. Plaintiff started working for defendant on November 21, 1991 as a winder tender. Her duties involved running end machines and lifting and moving bobbins on and off the machines repetitively. She developed bilateral carpal tunnel syndrome and bilateral tardy ulnar palsy as a result of her duties with defendant. Defendant admitted liability for her occupational disease.
3. Dr. Robert Saltzman performed bilateral carpal tunnel release procedures on plaintiff in early 1995 and bilateral ulnar nerve release surgeries in the summer and fall of 1995.
4. On April 1, 1996, Dr. Saltzman rated plaintiff with a five percent permanent partial impairment to each hand and each arm. However, plaintiff's condition worsened due to scar tissue even though she had not returned to work. Therefore, Dr. Saltzman increased her permanent partial impairment ratings on June 6, 1996 to a ten-percent permanent partial impairment to each arm and to each hand. At this time plaintiff's nerve conduction studies were normal, she had full ulnar motor function and her grip strength was good. Therefore, Dr. Saltzman released plaintiff from his care.
5. Nevertheless, plaintiff continued to experience problems and developed constant pain over her fingers and pain in her arms, shoulder blades and hands. Her pain developed even though she did not work during 1996 and part of 1997.
6. Dr. Stephen Naso of the Carolina Hand Center saw plaintiff for a second opinion at the request of defendant on December 28, 1994 and on November 12, 1996. He felt that plaintiff's condition had worsened since her surgeries. She had developed diffuse pain and tingling in her arms but there was no evidence of dystrophic changes. He felt she should be restricted to sedentary work with no pushing or pulling.
7. Plaintiff's vocational rehabilitation caseworker, Pat Clifford of Armstrong and Associates, was not able to locate suitable employment within plaintiff's geographic location. However, plaintiff located employment on her own at the Comfort Inn where she worked from February 10, 1997 through June 26, 1997. She worked for a short period as both a desk clerk and a guest service manager. Her duties were to answer the telephone and take phone messages. She used the computer frequently between 7:00 a.m. and 11:00 a.m. to check guests out. Furthermore, plaintiff used her right arm to swipe credit cards and to make electronic room keys. She also used the computer to make notes for housekeeping and to make room changes. Plaintiff often had other employees assist with the entries due to her hand problems. Plaintiff was eventually promoted from desk clerk to Guest Services Manager due to her ability to handle problems at the hotel. Plaintiff had difficulty performing her duties and was eventually terminated on June 26, 1997.
8. On July 3, 1997, Dr. Gary Poehling saw plaintiff for a second opinion on the bilateral upper extremity pain. After an examination, Dr. Poehling diagnosed plaintiff with a complex regional pain syndrome of the bilateral upper extremities. He recommended desensitization treatment. Zoloft and Elavil were prescribed and recommendation was made for a cortisone injection into the right scapula. Dr. Poehling recommended a functional capacity evaluation as the most recent one was last performed in 1995. Dr. Poehling indicated that plaintiff's rating would be much greater than ten percent to each arm. Dr. Poehling explained the regional pain syndrome as an abnormal reaction to injury where the nervous system becomes hypersensitive and the patient has much more pain that they should based upon the nature of the injury.
9. Thereafter, Best Stay Inn hired plaintiff on July 25, 1997 and she performed essentially the same duties as those she had performed at Comfort Inn. The same company owned both hotels. At Best Stay Inn, plaintiff worked the second shift, which required her to make greater use of the computer to check guests in, enter the method of payment, and make keys. Plaintiff was eventually terminated from Best Stay Inn on September 3, 1997. Plaintiff has not sought employment since this time.
10. Although plaintiff worked at the Comfort Inn and the Best Stay Inn, defendant did not prove by the greater weight that either job constituted suitable employment or was indicative of plaintiff's wage earning capacity. While a general job description was provided to and approved by Dr. Saltzman's office, the job description was vague and insufficient. The job description provided to Dr. Saltzman was a general job description for "front desk clerk" as defined in the Dictionary of Occupational Titles which only referred to the duties of meeting guests, providing rooms and keys, and operating the cash register or computer to log in guests. It did not accurately describe the amount and frequency with which plaintiff would have to operate a keyboard and input computer information.
11. Because defendant did not prove by the greater weight that the two jobs were suitable, it is immaterial that the servicing agent issued a Form 28T on February 13, 1998, advising plaintiff that her temporary total disability benefits would be terminated as of February 10, 1997, and informing her to complete a Form 28U if the return to work was unsuccessful. Nevertheless, assuming arguendo that the jobs were suitable, plaintiff was unable to continue performing either job due to her upper-extremity condition and the resulting chronic regional pain syndrome and therefore failed at her attempts. In fact, Dr. Poehling felt that plaintiff would have had difficulty performing these jobs and that it was reasonable that she would not have been able to continue.
12. After being terminated from Best Stay Inn, plaintiff returned to Dr. Saltzman on November 26, 1997 with complaints of left arm and hand pain. After reviewing Dr. Poehling's medical recommendations, a new functional capacity evaluation and nerve conduction studies were ordered. She returned to Dr. Saltzman on February 5, 1998 at which time she received trigger point injections.
13. On March 5, 1998, plaintiff returned to Dr. Poehling after receiving an injection at the right levator scapula area. Plaintiff advised that Dr. Saltzman had increased her permanent partial impairment rating to fifteen percent to each arm. Dr. Poehling agreed with this increased rating in light of plaintiff's poor endurance in a recent functional capacity evaluation. Dr. Poehling indicated that improvement in plaintiff's condition would be gradual and over a period of time.
14. On June 25, 1998, plaintiff returned to Dr. Poehling, at which time a pain control evaluation was recommended.
15. Plaintiff is capable of performing sedentary level work with no repetitive hand motions, no overhead lifting and slow manual dexterity as defined in her functional capacity evaluation of January 13, 1998. Since plaintiff has not sought work since leaving Best Stay Inn on September 3, 1997, she is in need of vocational assistance.
16. Although plaintiff's work with Comfort Inn and Best Stay Inn may have temporarily increased her symptoms, her work did not expose her to the hazards of her occupational disease or her resulting pain condition or aggravate or augment, however slight, her occupational disease. Plaintiff had developed regional pain syndrome and dystrophic changes in her arms and her permanent partial impairment ratings had increased before her work with Comfort Inn or Best Stay Inn. Furthermore, plaintiff's condition deteriorated as a natural consequence of her original occupational disease contracted while working with defendant even though she experienced some temporary exacerbation while working for the two hotels.
17. Plaintiff was last injuriously exposed to the hazards of her occupational disease and resulting pain condition while employed with defendant.
18. Since defendant has failed to establish that plaintiff's attempted employment was suitable and has failed otherwise to rebut the Form 21 presumption of disability, plaintiff continues to be unable to earn wages in any employment. However, defendant is entitled to a credit for money earned by plaintiff while working for Comfort Inn and Best Stay Inn.
19. Although plaintiff has received various permanent partial disability ratings, the greater weight of the evidence demonstrates that plaintiff has not yet reached maximum medical improvement because her ratings have increased, Dr. Poehling has indicated that plaintiff's improvement will be gradual, she is in need of additional treatment and medications as well as vocational rehabilitation.
20. Dr. Poehling's treatment has benefited plaintiff and plaintiff has requested that he be designated as her treating physician.
21. Considering the complexity of this case and the attorney's fees customarily awarded in cases of this nature, plaintiff's attorney's request for an attorney's fee in the amount of one-third of plaintiff's recovery is unreasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. The medical evidence of record fails to establish by the greater weight that plaintiff's employment with Comfort Inn or Best Stay Inn exposed her to the hazards of her occupational disease and resulting pain condition or that her employment with them augmented her disease, however slight. Therefore, plaintiff was not last injuriously exposed to the hazards of her occupational disease while employed with Best Stay Inn and Comfort Inn. N.C.G.S. § 97-57 and Rutledge v. Tultex Corp.,308 N.C. 85 (1983).
2. Plaintiff has not yet reached maximum medical improvement. N.C.G.S. § 97-31.
3. Plaintiff is entitled to the Form 21 presumption of disability which has not been rebutted as defendant failed to prove that the jobs attempted by plaintiff constituted suitable employment and failed to rebut the presumption of disability otherwise. Therefore, subject to defendant's credit and an attorney's fee hereinafter approved, plaintiff is entitled to reinstatement of her benefits beginning February 10, 1997 and continuing until plaintiff returns to work at the same or greater wages or further order of the Commission. Brown v. S N Communication,Inc., 124 N.C. App. 320 (1996) and N.C.G.S. § 97-32.
4. Defendant is entitled to a credit for money earned by plaintiff at Comfort Inn and Best Stay Inn. N.C.G.S. § 97-42.
5. Plaintiff is entitled to payment by defendant of reasonably necessary medical and vocational rehabilitation expenses which tend to effect a cure, provide relief, or lessen the period of plaintiff's disability including, but not limited to, the treatment rendered by Dr. Gary Poehling. N.C.G.S. § 97-25.
6. Plaintiff's attorney is not entitled to an attorney's fee in the amount of one-third of plaintiff's recovery because it is unreasonable. However, plaintiff's attorney is entitled to a reasonable fee in the amount of one-fourth of plaintiff's recovery.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission rejects the holding of the Deputy Commissioner and enters the following
 AWARD
1. Subject to defendant's credit and to an attorney's fee hereinafter approved, defendant shall pay plaintiff temporary total disability benefits beginning February 10, 1997 and continuing until plaintiff returns to work at the same or greater wage or until further order of the Commission.
2. Defendant shall pay for reasonably necessary medical and vocational expenses which tend to effect a cure, provide relief, or lessen the period of plaintiff's disability including, but not limited to, the treatment rendered by Dr. Poehling.
3. A reasonable attorney's fee in the amount of one-fourth or 25% is hereby approved and should be made directly payable to plaintiff's attorney.
4. Defendant shall pay the costs due this Commission.
 ORDER
Plaintiff's motion that Dr. Poehling be designated treating physician is hereby Granted.
This the ___ day of October 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER